case number 25-1259. Thank you. May it please the Court. Good morning, Your Honors. My name is Stephen Haskos and I represent the plaintiff, Mr. Edward Henries. Mr. Henries has asserted that he is an American citizen, having derived citizenship at birth from his legal mother. But Mr. Henries was removed from the United States pursuant to a removal order and is now residing in his birth country of Liberia, with no apparent path to lawfully return to the United States absent a review of the merits of his citizenship claim. Now, a noncitizen may obtain judicial review of his claim of derivative citizenship in one of two ways. The first would be to defensively raise it in a removal proceeding. The second, the path Mr. Henries chose, would be to file an N-600 application for a certificate of citizenship, appeal an adverse decision to the AAO, and then file a 1503A action in the district court, all of which he did. However, as we know, the statute at 1503A does include jurisdictional exception 2, in fact. That reads, no action may be instituted in any case if the issue of a person's status as a national of the United States arose by reason of or in connection with any removal proceeding or is an issue in any such removal proceeding. The first jurisdictional exception is that issue here. We know that these exceptions are designed to protect removal proceedings from judicial interference and to preserve 8 U.S.C. 1252 as the exclusive means of challenging a final order of removal. That 1252 structure is that somebody loses in the immigration court. They file an N-600. I just want to be clear. When you said that first, you're referring to A-1. Correct. Okay. Not A-2. So A-2 is off table. Correct. Although the Court does somewhat implicate A-2, but I'll address that in due time. Now, this Circuit has not had occasion to issue a precedential decision in which either jurisdictional exception is interpreted. However, there are several district court decisions in which various courts in this — district courts in this Circuit have attempted to interpret the statute. All of those have used as the starting point whether or not the individual, when in removal proceedings, raised the issue of his nationality. And — Did that not happen here? In other words, with respect to the — there was a request for a TRO. Is that right? There was. In connection with that, he says specifically — I'll just write it here on this page. Supplemental Appendix A-10 to A-18 or so. He says, in connection with his removal proceeding, he seeks a TRO, halting the government's imminent removal of him from the United States and ordering the government to release him from custody because he has pending the Form N-600, right, the certificate application — the application for a certificate of citizenship. And it's — why isn't this more or less an acknowledgment that this was in connection with a removal proceeding within the meaning of 1503a1? So initially, Mr. Henrys did not raise nationality as a defense in removal proceedings, which, of course, the jurisdictional exception contemplates. It says, arose by reason of or in connection with any removal proceeding. As far as the habeas corpus — Well, his removal proceeding at the time that he filed this memorandum of law requesting a TRO had not yet terminated. We argue that it had. In fact, the removal proceeding ended in 2011, about 11 years prior to the filing of the habeas. The purpose of the habeas corpus was to protect Mr. Henrys' rights, to ensure that he remained within the United States in order to file his 1503a action. Of course, another sort of jurisdictional exception — Let me ask you something. So if someone is detained, rightly, lawfully or not, for a period of years after they're — after they've been ordered removed, but they're still detained and not yet removed, you're saying that the removal proceeding has already been terminated? Absolutely. In fact, the removal order becomes administratively final when the Board of Immigration appeals dismisses an appeal. Now, there are some exceptions. If the person files a petition for review to the circuit court, if there's a stay in place, different circuits differ. But generally speaking, in November 7, 2011, when the Board dismissed his appeal of his application in the Immigration Court, which is an application for relief under the Convention Against Torture, not anything to do with nationality, that order became final. So Mr. Henrys is removable from the United States dating back to November 7, 2011. And the cases that the district court judge cited, all of them, in fact, in his decision, start with, did removal proceedings end, did the person raise nationality in those removal proceedings? We can address them one by one and sort of run the gamut. The reality is the Western District's decision in this case is the most expansive reading of the jurisdictional exception that is out there. And what this district found was that even though Mr. Henrys didn't raise nationality in his removal proceedings, that he's nonetheless barred from doing so because his efforts to remain in the United States in order to file the 1503A action were either in connection with or arose out of removal proceedings. And our position is that that is not only not in accordance with the plain meaning of the statute, but it's completely in conflict with the very district court decisions that the magistrate judge in this Western District decision cited. Well, that's a literal interpretation of the word arose in connection with. And I can certainly see your argument. But isn't citizenship integral to every deportation proceeding? I mean, that's the burden on the government is to show that he's an alien. And so that means that every proceeding that occurs, a removal proceeding that occurs, implicates citizenship. Isn't that true? So in that sense, it's in play. Maybe it wasn't specifically raised by the petitioner, but are we restricted to that interpretation, the interpretation that it wasn't, that that means it didn't arise if the petitioner doesn't raise it himself? I think that the district court decisions that the judge cited in this matter, and that I can sort of summarize briefly, all unequivocally take that position out of play. And that's because all of those decisions interpret 1503A in the context of did the person raise it in removal proceedings. And that analysis would never happen if nationality was unequivocally the threshold issue in every removal proceeding. Now, the government does have the burden in any removal proceeding to demonstrate that the person is not a citizen of the United States. But if that meant that this — that if we sort of incorporated that into our interpretation of 1503A, then I don't think we would have gotten this far in our analysis. There would be no reason to address it. The statute would be written in a much clearer, succinct way. And briefly, you know, the district court also sort of hand-in-hand with what you raised, Your Honor. The district court sort of suggests that the proceedings herein hadn't run their full course because Mr. Henry's wasn't removed. But if, again, if we apply that, then why wasn't his action barred by 1502A — I'm sorry, 1503A2, which essentially says that if your nationality is at issue currently as opposed to it was in issue in 1503A1, then 1503A2 would govern and we would say you can't bring your action because it's currently in issue because you're yet to be removed. Further, there's a requirement that you're in the United States pursuant to 1503A1. So if we're waiting for the person to be removed to exercise their 1503A right, then they would never satisfy the provision that requires them to be present in the United States. I see I'm over my time. Thank you. Thank you very much. May it please the Court. My name is Evan Schultz. I represent the government. Your Honor, I'd like to start with Judge Loehrer's point, which is that the language in the TRO is in writing, and it makes a clear connection between removal proceedings and the application for a certificate of citizenship. The law is clear about the consequences. It says in Section 1503A that when that sort of a connection exists, that district courts do not have jurisdiction. That's what the district court here held and this court should affirm. To a certain extent, given both the language of the statute, which is broad, it's expansive, the phrase in connection, if you look at the Hedley-Omler case, says that that phrase especially is quite expansive. And if you look at this, Evan? Is there no limit, Mr. Schultz? In other words, is there no limit to the, because I think you're pressing this point, in connection with, to how far that goes. Imagine a situation where someone has been subject to removal proceedings 20, 25 years ago, and they have a certificate of citizenship, finds out just hypothetically that he or she is in fact a U.S. citizen, and wants to have or file a declaratory judgment under 1503 in court, and does not have the right to have that certificate of citizenship. Is that okay? I mean, is that one that should be, that can be channeled, that's subject to judicial review as opposed to being channeled to the administrative agency? Thank you, Your Honor. So I think it is always important to keep in mind that any given case is going to be fact-specific. In the case that you just put forward, part of the hypothetical is that this person simply found out decades later having nothing to do with a removal proceeding. Well, since that's part of the hypothetical, then clearly it wouldn't fall inside the statute. But I think in a possibly slightly tweaked hypothetical, where it's a little bit unclear when and why that person ended up filing for the N-600, it's going to be, again, a question of context. And that's what the Fifth Circuit said in the Rios-Valenzuela decision, that context is what matters. But I would like to point your attention to a couple cases where there have been years between when the Immigration Court, the Board of Immigration Appeals, has ended its proceeding and when the subsequent action was taken. In the Nguyen case, N-G-U-Y-E-N, in our brief, from the Middle District of Pennsylvania, there was a nine-year gap. In the Duarte-Serri case from the Western District of New York, which is discussed by the magistrate, there was a three-year gap after the Board of Immigration had denied the appeal. So the fact that you have years by itself isn't some sort of a bar. Now, if you look at the district court decisions here, they do talk about how far this can go. I mentioned Hedley-Omer, but you can also look at the Southern District of New York's case in Sharp v. Coven, where they say that the word is forever. That's not the word in the statute. That's the word they use in the decision. And I think that if nothing else, this Court has to acknowledge the breadth of that statute, but at the same time realizes that it doesn't need to go to talk about where that end point might be, given the strong facts of this case. Is the government's position that removal proceedings don't terminate until the noncitizen is actually removed? That is what we've argued below. What's the basis for that? It goes to what Judge Walker said a moment ago, that citizenship is always at issue in removal proceedings. And I — until — But in this hypothetical, the removal proceedings are — there's nothing more to be done in a removal proceeding. So they're — they're over, right? Well, people can always file motions to reopen. That's happened in some of the cases here. That happened. Yeah, but — People can always file a motion to reopen in immigration court or before the Board of Immigration. It's to reopen a proceeding so that that suggests that the proceeding has ended and needs to be reopened. So what is the limit? Again, what we've argued is that the removal proceedings would end with removal. But to resolve this case, I don't think that this Court needs to plumb the outer depths of that. Again, here — I'm not — and that may be true, but I want to know what the outer depths are before I jump in. And — because I think you're making — you're making an argument that is to counter the argument we just heard, that removal proceedings are indefinite until the person is actually removed. And that is a pretty maximalist argument. And I wonder if you — do you need to make that argument? Your Honor, given the facts of this case, again, I think it's quite clear that there — again, there's no need to go that far for this case. If you're asking what the reading of the statute is that we have, that is what we have argued. Okay. But go back to — go back to reopening. Why, if citizenship is discovered at a later date and there's been removal proceedings and they're over, either because the guy's left the country or because the government's changed its position, wouldn't that be a slam dunk on a reopen? I'm a citizen, Jim. I'm a citizen. I can prove it. If somebody's got the N-600 certification at that point, is the person foreclosed from asserting that anymore because the proceedings have — the removal proceedings have been closed? Or isn't a motion to reopen available? So a motion to reopen, depending on the circumstances — again, I'm not the executive immigration — I'm not the executive office of immigration, but there is a way for folks to file a motion to reopen before the immigration judge or more likely before the board. And they could prove in that motion their citizenship. That's right. They could do that. And, in fact, that was done in the Leynez line of cases that we discuss in our brief. And that was a case where the district court, Southern and then up on appeal, the Second Circuit held that there also was no jurisdiction, but then recommended that the alien there file a motion to reopen before the board. And then subsequently that happened. And then that motion to reopen itself in later years, in 2025, came up to this court. And this court ultimately held that that person is a citizen. So that was very much a ground of judicial — a route of judicial review that would have stayed precisely within the immigration court system. And that wasn't done here. Instead, what happened here is the alien didn't take that route. I don't know why. That was their strategy call. And instead they filed the — they strategy call. And I do want to talk about judicial review for just a minute, Your Honor. Opposing counsel said that there is no line of judicial review here for Mr. Henry while he's in Liberia. I do want to emphasize that he did have routes available to him while he was here. He could have done this motion to reopen route. That's described in the Leynez line of decisions. And even in Liberia, where he is now, he could have taken advantage of the system under 1503B and C. B and C, right? Which specifically talk about someone who's abroad. And as far as I know, maybe — That gives — that entitles them to come to the border here and then seek admission on the basis of citizenship. Potentially, yes. Yeah, potentially. But is that a matter of judicial review or is that administrative review under B and C? For C, there would be judicial review because there's habeas. And for B, it would be before the Council and the State Department. Yeah. And, again, that is something that, as far as I know, Mr. Henry has not pursued. I don't know what the result of it would be. It would be speculation. But it does seem that he hasn't pursued it. That is a pathway that's there. One other point I wanted to make — I'm a bit hesitant to pick at the scab a little bit, just lower, but the — on the issue of when removal proceedings end, I think it also helps to — for purposes of this, to look at 1503A2, because if the removal proceedings were to — well, it's — maybe it's not worth the point, but — Some of the precedent says that 1503A2 deals with things that are ongoing and 1503A2 deals with things in the past. Even if the removal proceedings were over in the way that you're describing, that then leaves precisely the grounds for 1503A1's connection language to kick in. I'll tell you why I might agree, but then let me know if I'm wrong. So one uses the word arose, past tense. Two uses the word is in issue, which suggests to me that it's a current, present removal proceeding. Is that — That is what some of the lower court precedent says and possibly even one of the — And what's wrong with that reading? There's nothing necessarily wrong with that reading. What I'm saying is even if you were to say that the removal proceedings had ended at some point in the — some years in the past, that would still allow 1503A1 to have its full force.  That's all I'm saying. Thank you very much. Thank you so much. Mr. Haskins. Thank you. Very briefly, as far as options to Mr. Henry's — I'm not sure I want to say this. As far as a motion to reopen, there are things that would preclude him from filing that. There's something called a departure bar. He's now out of the United States. He can now file a motion to reopen. Even while he was present in the United States, he could have filed a motion to reopen. But what he would need to do is demonstrate How do you make sense of the departure bar? How do you square the departure bar with 1503B and C? I mean, B is someone has been — is out of the United States. Right. Counsel, you know, mentioned the viability of Mr. Henry's pursuing those. But this is the point, right? He was in the United States and he followed the procedure to file a 1503A action. There'd be no reason to even contemplate a 1503B. And again, I think the point was there are avenues now for him to pursue, including under C, there's an avenue to obtain judicial review, but to pursue his citizenship application. That may be avenues in addition to this current avenue we're pursuing. But I do want to circle back to a couple of things very, very quickly. I think it bears repeating that all of the cases mentioned in the Western District decision and the cases cited by counsel just now, in all of them, nationality was raised. I would posit, therefore, that the time limitation that this court looked into, none of that is even implicated unless and until the applicant raised nationality in removal proceedings. And I would also add that with respect to the habeas, we did cite to a case. I believe it was called — it was out of the District of Massachusetts. Anees is the name. And in that case, they write, adjudication remains separate from removal proceedings, that is, adjudication of the habeas, even where it is conducted after reopening, prompted by a habeas petition, and it's not barred by the in-connection with language because the N-600 denial presented an independent denial of a right or privilege. That's in accord with the Rios case from the Fifth Circuit that counsel mentioned, which effectively says that it's not so much the time, it's the genesis, right? Where does the dispute, the issue of citizenship arise? Just so that I'm very clear in my own mind, if — and maybe there's a dispute about how you read the memorandum of law that was filed in this case by Mr. Henry's habeas memo for the TRO. But if a petitioner in the context of a habeas says the reason — just hypothetically, the reason that I want to get a TRO and obtain habeas relief is to avoid removal from the United States, would that be enough, in your view, to come within the meaning of in-connection with or rose from, as it's stated in 1503? I would argue no, even in that hypothetical, because the plain language says arose by reason of or in connection with a removal proceeding, not removal. And you have to interpret — and not only does the plain language tell us that, but it has to be interpreted that way. Otherwise, 1503a1, as I mentioned before, really wouldn't exist or function in the way it's meant to function. If we wait for removal, why would it not? Half of the language would be superfluous. And Sharpe v. Cobben, another case counsel mentioned, actually says that explicitly, right? Sharpe v. Cobben says that until removal proceedings ultimately result in a final order, this Court lacks jurisdiction, even under the standard articulated in Henry. Henry's standard basically being that if it's raised earlier in removal proceedings, then the Court sort of toes this delicate balance of how much time between removal and the filing of the N-600 makes it sufficiently outside the context of removal proceedings. You heard my question, and I'll let you go, about the tense in a1 compared to a2. Is an issue a2 arose in a1? So rose seems to suggest it's a backward-looking language. Arose in connection with a removal proceeding, meaning a removal proceeding that may have occurred. Is, is in this removal proceeding. What am I, what am I missing? We would concede that 1503a1 relates to past removal proceedings. It has to. Otherwise, what is a2 all about? But again, the Court in our case made a leap that no other Court has made, an interpretation that no Court has made. And I think that that has to be reiterated over and over, quite frankly. Thank you. I appreciate it.